# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH SCOTT BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-24-JHP-SPS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Kenneth Scott Brown requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 8, 1985, and was thirty-one years old at the time of the administrative hearing (Tr. 37).  He completed high school and some college, and has worked as a track vehicle repairer, machinist apprentice, and fry cook (Tr. 25, 43, 196).  The claimant alleges that he has been unable to work since an amended alleged onset date of October 23, 2014, due to reactive airway disease, right knee patellofemoral syndrome, left knee patellofemoral syndrome, right ankle strain, left ankle strain, degenerative disc disease lumbar spine, migraine headaches, post-traumatic stress disorder (PTSD), radiculopathy left lower extremity, and bilateral hearing loss (Tr. 195).

### Procedural History

On December 13, 2015, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  His application was denied.  ALJ B. D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 12, 2016 (Tr. 18-27).  The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She found that the claimant had the residual functional capacity (RFC) to perform less than the full

range of light work, *see* 20 C.F.R. § 404.1567(b), meaning that he must avoid concentrated exposure to dust, fumes, odors and gases; can perform simple and some complex tasks (defined at the administrative hearing as semi-skilled) with routine supervision; he can adapt to a work environment and relate to others on a superficial work basis, but that he should limit public contact to occasional (Tr. 23). The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, mail room clerk, assembler, and sorter (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly account for the claimant's 100% disability rating from the Veteran's Administration (VA); (ii) failing to account for evidence that conflicted with the mental RFC findings in the opinion, including mischaracterizing opinion evidence; and (iii) failing to account for his nonsevere impairments in assessing his RFC. The undersigned Magistrate Judge finds the ALJ *did* make a number of errors at step four, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of asthma, anxiety, and cannabis dependence, as well as the nonsevere impairments of reactive airway disease, right and left knee patellofemoral syndrome, right and left ankle strain, degenerative disc disease of the lumbar spine, migraine headaches, PTSD, radiculopathy left lower extremity, and bilateral hearing loss (Tr. 21). At step two, she stated that she gave little weight to the VA disability rating, noting that such a finding is not binding on

the Social Security Administration (Tr. 21). In February 2015, the claimant's combined disability rating through the VA was 100%, including PTSD, reactive airway disease, migraine headaches, degenerative disc disease of the lumbar spine with intervertebral disc disease, right and left knee and ankle impairments, and radiculopathy (Tr. 165-190, 444). Records from the VA indicate the claimant had concentration problems following his discharge from the Army described as cognitive-linguistic deficits characterized by decreased auditory attending skills, working memory for orally presented information, psychomotor/information processing speed and divided attention, explicit learning and delayed recall of verbal information, visuoconstruction skills, and planning and psychomotor speed (Tr. 268, 304-306). He further reported problems adjusting to civilian life, and was only making fair progress (Tr. 271-272). Prior to the VA disability rating being assessed, the claimant reported panic attacks, and weight loss of forty pounds since being discharged (Tr. 290). He also reported frequent, if not daily, use of marijuana, and therefore had an additional diagnosis of polysubstance abuse (Tr. 351-354).

Once the claimant was diagnosed and assessed with disability related to PTSD, he was placed in a PTSD group for therapy (Tr. 455-456). A letter dated July 28, 2016 indicates that the claimant had been participating in Intensive Outpatient Program treatment for substance abuse and PTSD, and that he was also meeting with a psychiatrist for ongoing psychiatric care and treatment (Tr. 518).

Dr. Edgar Kranau, Ph.D., completed a PTSD Disability Benefits Questionnaire, in which he indicated that the claimant met the DSM-5 criteria for PTSD, and that

symptoms he had included agoraphobia, nightmares, tremors, and night sweats (Tr. 510). He further indicated that the claimant had occupational and social impairments with deficiencies in most areas including work, school, family relations, judgment, thinking, and/or mood (Tr. 511). Upon reviewing the claimant's record, Dr. Kranau stated that the record revealed at least two instances of firefights in which the claimant believed he killed at least one person (Tr. 513). In establishing the claimant's PTSD diagnosis, Dr. Kranau indicated the claimant met, *inter alia*, the following criteria: directly experiencing the traumatic event; recurrent, involuntary, and intrusive distressing memories of the traumatic event; avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event; feelings of detachment or estrangement from others; and problems with concentration (Tr. 514-515). His symptoms included depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances including work or a worklike setting, impaired impulse control, and persistent delusions or hallucinations (Tr. 516).

State reviewing physician Bernard Pearce found that the claimant had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public (Tr. 66-68). He concluded that the claimant could perform simple and some complex tasks with routine supervision, could adapt to a

work environment, and could relate to others on a superficial work basis, but that he should limit public contact (Tr. 68).  Dr. Phillip Massad, Ph.D., affirmed this assessment on reconsideration (Tr. 80-82).

In her written opinion, the ALJ summarized the claimant's hearing testimonies and the evidence in the record.  As stated above, at step two she stated that she gave little weight to the VA disability rating (Tr. 21).  At step four, she again referred to the VA disability rating, but asserted that "very little of the VA reports is concerned with PTSD or the claimant's general anxiety" (Tr. 24).  She stated that there were no in-depth psychiatric or psychological evaluations, and that the claimant had not met *inpatient* criteria for PTSD in July 2014 (Tr. 24-25) (emphasis added).  She gave great weight to both the physical and mental assessments conducted by state reviewing physicians, as well as a reviewing physician who found that the claimant's migraines were not supported by the medical evidence (Tr. 25).

Here, the ALJ wholly failed to properly assess the opinion evidence regarding the claimant's capabilities and mental limitations.  "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of

examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include some limitations related to the claimant's "mental impairments" in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe mental impairment of anxiety, nor the claimant's "nonsevere" impairment of PTSD. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of

these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Furthermore, the ALJ failed to properly account for *all* of Dr. Kranou's opinion, and engaged in improper picking and choosing of the records from the VA in order to minimize the effect of the claimant's anxiety and PTSD. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission here because these impairments can have limitations that directly impact the claimant's ability to perform work. Instead, the ALJ should have explained why the claimant's severe (and nonsevere) mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

The undersigned Magistrate Judge also agrees that the ALJ's treatment of the claimant's disability rating was deficient. Instead, she asserted that there were no in-depth evaluations of the claimant's mental status while simultaneously ignoring the

evaluation from Dr. Kranau provided in the record, except to note it as the basis for the claimant's PTSD diagnosis (Tr. 24-26). "'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'" *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. An ALJ is not required to give controlling weight to the disability ratings by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but she *is* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. This is particularly important where, as here, the claimant largely received treatment at the VA, and the VA disability rating considered the claimant's impairments both singly *and* in combination. Furthermore, while the ALJ noted the claimant's PTSD diagnosis, she ignored functional evaluations related to the claimant's physical impairments, which is important to consider

when the ALJ's "analysis" of the evidence was that there was not enough of it. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Moreover, although the ALJ was not required to give controlling weight to the 100% disability rating by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), she nevertheless *was* required to determine the proper weight to give such a finding by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. Instead, the ALJ simply recited this fact without discussion. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The undersigned Magistrate Judge agrees that the finding of

disability is the province of the ALJ, but the ALJ is not entitled to reject evidence out of hand without determining how that evidence affects the claimant's impairments and how it is otherwise supported by the record.  This seems particularly important where, as here, such a rating may provide additional insight into the effect of the *combination* of *all* the claimant's impairments.  *Carter v. Colvin*, 27 F. Supp. 3d 1142, 1146 (D. Colo. 2014) "(When a claimant has one or more severe impairments the Social Security [Act] requires the [ALJ] to consider the combined effects of the impairments in making a disability determination."), *quoting Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987), *citing* 42 U.S.C. § 423(d)(2)(C).

Because the ALJ failed to properly conduct a step four analysis, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

-13-

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**